## THE MERCANTILE TRUST CO. *v.* HENSEY.

---

EQUITY; PRINCIPAL AND SURETY; BUILDING CONTRACTS.

1. Where a surety company becomes surety for a builder on a building contract with the owner for the erection of twenty-one houses, and at the same time becomes surety for the owner on a contract made by him with third persons to complete and sell fifteen of the houses at an advanced price, and the owner gives the company a deed of trust on the fifteen houses to secure it against loss under the latter contract, each of such contracts is independent of the other and each imposes its own liability, so that if the surety completes the twenty-one houses upon default of the builder, the fact that the owner has failed to pay the builder the entire contract price, will not entitle the surety to foreclose the deed of trust, and an attempt to do so will be enjoined at the suit of the owner and it will be declared void; the rights of the surety as against the owner growing out of his failure to pay the builder all of the contract price being left for the determination of a court of law.

2. The maxim that he who seeks equity must do equity as a condition upon which he can obtain relief, does not apply where the demand of the defendant is based upon a contract separate and distinct from that which forms the subject of the plaintiff's action,

but only where the relief sought by the plaintiff and the right demanded by the defendant belong to or grow out of the same transaction.

No. 1180.　Submitted October 17, 1902.　Decided January 20, 1903.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia in a suit in equity vacating a deed of trust upon certain real estate and enjoining a sale thereunder.　　　　　　*Affirmed.*

The COURT in the opinion stated the case as follows:

The bill in this case was filed by the appellees, Melville D. Hensey, Frederick Mertens and Park Agnew, to obtain an injunction to restrain the sale of four certain lots of ground, and to have a certain deed of trust vacated.　The deed of trust was made by the appellee Hensey and wife to Russell and Johnson, as trustees, to indemnify and save harmless the Mercantile Trust Company, as surety for Hensey, in a bond executed to Warner and Rheem.

It appears that, on the 24th day of January, 1900, a certain William S. Jones contracted with the appellee Hensey to finish and complete the work on 21 houses that had, under a previous contract, been commenced.　These houses so contracted to be completed were situate on 21 certain lots in the District of Columbia; and the sum contracted to be paid Jones for the work and materials in completing the houses was the aggregate sum of $89,250.　The work was to be finished according to contract, plans and specifications, and within seven months, under penalty of $50 per day, as liquidated damages, for all time beyond the seven months.　To insure the fulfillment of this contract, Jones executed his bond to Hensey, in the penal sum of $50,000, conditioned for the performance of the contract, that is to say, the completion of the said 21 houses, according to contract, plans and specifications; and the appellant, the Mercantile Trust Company, became surety on the bond of Jones for the faithful performance of his contract.

It further appears that, on the same day of the date of the

contract and bond executed by Jones to Hensey, the latter entered into a contract with and agreed to complete for Warner and Rheem, 15 of the houses embraced in the contract made by Jones with Hensey, for and in consideration of $109,500, to be advanced, according to a schedule arranged, for the purpose of completing the buildings commenced upon the said 15 lots; the advancement of the said $109,500 to be made to Russell and Johnson, and Bates Warren, at intervals as the work on said buildings progressed, and according to the schedule of payments attached to said agreement. To secure the performance of this contract by Hensey he was required to execute a bond to Warner and Rheem in the sum of $40,000, conditioned for the performance of the contract by Hensey, and which contract is referred to in the bond; and upon which bond the Mercantile Trust Company likewise became surety for Hensey. And for some reason not apparent, Hensey, on the same day of the execution of the bond to Warner and Rheem, executed a deed of trust upon the said 15 houses to Russell and Johnson, as trustees, for the expressed purpose of protecting and saving harmless the Mercantile Trust Company, as surety on the bond of Hensey to Warner and Rheem. The four lots, the subject-matter of this controversy, are embraced in the deed of trust of the 15 lots; and the deed of trust constituted a second mortgage on said four lots sought to be released from the operation of the deed, and which deed constituted a third mortgage on the remaining 11 lots embraced in said deed.

It is alleged, and not disputed, that shortly after the 24th day of January, 1900, Jones, in pursuance of his contract with Hensey, entered upon the work of completing the said 21 houses, and continued the work thereon until some time in October, 1900, when he defaulted in his contract, and failed to go on with the work. Whereupon the Mercantile Trust Company, the surety on the bond of Jones, undertook the work of completing the said 21 houses, according to contract. It is alleged in the bill that the bond given by Hensey to Warner and Rheem, and upon which the Mercantile Trust Company was surety, was for the sole purpose of pro-

tecting Warner and Rheem against any default or failure on
the part of Hensey in carrying out and performing the con-
tract made with them; and that said bond had no reference
whatever to the obligation or duty of the said Mercantile
Trust Company assumed as surety on the bond given by
Jones to Hensey. And this would seem to be according to
the plain import of the terms of the instrument itself.

It is alleged in the bill that the appellant, the Mercantile
Trust Company, has directed and caused the said Russell
and Johnson, the trustees in the deed of trust made to them,
to advertise for sale the four lots, 27 and 38 in block 6, and
32 and 34 in block 5 in Tulloch's subdivision, under the deed
of trust made to them, to secure the Mercantile Trust Com-
pany as surety on the bond given to Warner and Rheem.
But the complainants allege that the defendant, the Mer-
cantile Trust Company, is without right or authority to re-
quire or direct the defendants, Russell and Johnson, to pro-
ceed to make sale of said four mentioned lots, for the rea-
son that the said Mercantile Trust Company has not suffered
or been subject to any loss as surety on the bond given by
Hensey to Warner and Rheem, as before stated. That the
only loss that the said Mercantile Trust Company has been
subject to as surety, was on its obligation or bond given by
Jones to Hensey, and that it has never been required to make
good any default upon the part of said Hensey, nor has there
been any such default by him under the terms and conditions
of the bond, or the agreement referred to therein. That said
complainants are advised and so charge that the defendant,
the Mercantile Trust Company, was and is primarily liable
under the bond given to the complainant Hensey by the said
Jones to secure the completion of the 21 houses, under the
contract therefor; and that if the said Jones or the said Mer-
cantile Trust Company had so carried out and performed
their said contract no liability or loss would or could have
occurred, and in seeking to have said lots or houses sold un-
der the deed of trust it is taking advantage, or attempting to
take advantage, of its own wrong, contrary to equity and
good conscience.

It is further alleged by the bill that the houses never were completed, according to contract, plans and specifications; but the defendants, by their answer, aver and maintain that the houses were all completed, according to contract, plans and specifications; and that the 15 houses, for the completion of which bond was given to Warner and Rheem, were completed in June, 1901, to the satisfaction of Warner and Rheem, and were by them accepted in discharge of the obligation of said Hensey and his surety, the said Mercantile Trust Company, on the bond given to them.

The case in the court below was heard upon bill and answer, there being no proof taken; and the court decreed that the attempted sale of the four lots or houses should be perpetually enjoined, and that the deed of trust of January 24, 1900, from Hensey and wife to Russell and Johnson, as trustees, should be null and void, and that the same should be delivered up to be canceled. The Mercantile Trust Company, and Russell and Johnson, took an appeal from the decree,— there being a severance as to the other defendants.

*Mr. John Ridout* and *Mr. Hayden Johnson* for the appellants:

1. The definition of the equitable maxim, " He who seeks equity must do equity " that has been most accepted as explanatory of this maxim is given in *Comstock* v. *Johnson,* 46 N. Y. 615.

This definition is quoted in the text of most of the modern text-books upon the subject. 1 Pomeroy Eq. Jur., Sec. 386, is cited in the notes of probably all the text-books whose notes are brought down to date, and is either quoted or referred to as authority in numerous cases decided since the date of its decision (1871). See also *Loncy* v. *Courtney,* 24 Neb. 580; *Willard* v. *Tayloe,* 8 Wall. 557; *McQuiddy* v. *Ware,* 20 Wall. 14; *Thomas* v. *Railroad Co.,* 109 U. S. 522; *McGreal* v. *Utermehle,* 1 App. D. C. 359; *Sturgis* v. *Champneys,* 5 N. J. & Cr. 97.

2. The limitations of the maxim — the restrictions placed

upon its applications are given in 1 Pomeroy, volume 2, section 386. See also *Fink* v. *Fink,* 10 Ohio St. 501.

3. The greatest extent to which the rule has been carried was probably in the case of *Secrest* v. *McKenna,* 1 Strobh. Eq. (S. C.) 356. Where the adverse equity grows out of the very contract sought to be enforced, there is of course no question of the application of the rule. *Kline* v. *Vogel,* 90 Mo. 239; *Deans* v. *Robertson,* 64 Miss. 195. But the rule by no means requires that it arise out of the same contract or even the same transaction, providing it grows out of the very controversy before the court or of such circumstances as the record shows to be a part of its history, or is so connected with the case in litigation as to be presented in the pleadings and proof, with full opportunity offered to the party thus recriminated to explain or refute. *Comstock* v. *Johnson, supra.*

4. Applying then the principles of what seems to be the law upon the subject to the case at bar the only question for determination is — does the equity sought by the trust company grow out of a transaction so separate and distinct from that giving rise to the plaintiff's claim as to bring it outside of the limitations of the rule; does the equity of the trust company grow out of a controversy *not* before the court, or out of such circumstances as the record shows *not* to be a part of its history, or is it *not* so connected with the cause in litigation as to be presented in the pleadings, with full opportunity afforded Hensey to explain or refute?

The trust sought to be canceled, the bond for which it was given as indemnity, the contract this bond was given to secure, the contract between Jones and Hensey, the bond given to secure the performance of that contract, all the deeds and deeds of trust, and every paper of every description mentioned in the record as relating to the controversy, were dated the same day, January 24, 1900. Every paper mentioned in the record and relied upon either by the plaintiff or defendant has reference to the same single transaction — the erection of the houses in question. All these papers,

executed simultaneously, taken together define the relations of each party to that transaction. Omitting one paper from the series the agreement is imperfect, incomplete. Omitting any one paper and a portion of the consideration for the execution of all the others is taken away. The consideration mentioned in the contract between Hensey and Tulloch for the completion of the latter's six houses is $3,630. The trust company is surety upon Hensey's bond for his performance of this contract. The contract between Hensey and Jones for the completion of all twenty-one houses gives to the latter $4,250 per house for their completion. The houses were all in the same condition with respect to their completion. It cannot be assumed, then, that Hensey would have contracted to finish all six houses for the total sum of $3,630, were it not for the execution of the other contracts on that day which provided additional money for him, and which contracts were executed by the other contracting parties on condition that he would execute the Tulloch contract. Nor can it be assumed that the trust company would have become his surety upon such an undertaking, were it not for these additional contracts, and its disbursement of all the money. It is equally apparent that the trust company's suretyship upon the Jones bond to Hensey was entered into upon the strength of Hensey showing that he could provide the contract price; that the contract with Hensey and with Warner & Co., by which the greater portion of the contract price was provided was therefore necessitated; that this latter contract required the execution by Hensey of his bond to Warner and Rheem, which was in turn made the foundation of the second trust, now the subject of controversy.

These are but illustrations. In like manner it can be easily seen that each paper is essentially and inseparably connected with and dependent upon every other paper in the case, the whole forming and defining the entire contract of the parties in reference to one distinct and indivisible transaction. To consider one paper without the other is to consider but a portion of the agreement.

It is submitted, therefore, that it is unreasonable to say, that the two equities grow out of separate and distinct transactions or. that the equity of the defendant does not arise out of the subject-matter before the court, or even that the strictest application of the maxim would. not bring the present case within its limitations.

5. There is nothing better established in the law of equity jurisprudence than the rule initiated in *N. Y. C. RR. Co.* v. *Mayor,* 1 Hilt. (N. Y.) 562: "A court of equity will not allow a party to claim benefits under a contract of which he repudiates the obligation." *Mumford* v. *Am. J. I. & Tr. Co.,* 4 N. Y. 463; *Campbell* v. *Campbell,* 21 Mich. 438; *McLaughlin* v. *McLaughlin,* 20 N. J. Eq. 190; *Ridgway* v. *Hayes,* 5 Cr. C. C. 23; *May* v. *Scofield,* 6 D. C. 235; *Creswell* v. *Lanahan,* 2 McArthur, 484; *Buckhannon* v. *Upshaw,* 1 How. 56.

The operation of this rule is the result of the application of the maxim under consideration.

Hensey's contract with Jones and the trust company **is** for the completion by the latter of the same houses upon which is secured the trust sought to be canceled. The money now due from Hensey to the trust company on account of Jones' contract, is the balance of the consideration for the completion of these houses. Hensey having failed to do so, the trust company advanced this balance itself and completed the buildings. Is Hensey to be permitted to receive the benefits of his contract by giving to him the completed houses with the trust company's trust thereon canceled, while he repudiates his obligation thereon by refusing to pay the balance due? Is Hensey to be permitted to appropriate to himself the trust company's work without paying what he has contracted to pay for the performance of that work?


*Mr. A. A. Birney* and *Mr. Henry F. Woodard* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

It is conceded that the 15 houses, including the four that were advertised for sale under the deed of trust made by Hensey to the trustees, Russell and Johnson, were finished, and accepted by Warner and Rheem, and, of course, all liability on the bond and contract to them ceased. The only ground for liability of Hensey to the Mercantile Trust Company, under and by virtue of the deed of trust, would be for any and all loss, cost, damage or expense incurred by the trust company, *by reason of its having become bound as surety for Hensey in the bond* given to Warner and Rheem. The deed of trust was not intended as indemnity, and does not furnish security, for any default of Hensey, under the contract with Jones, the original contractor, in failing to complete the 21 houses. That was an independent contract, and for the faithful performance of which the Mercantile Trust Company became surety for Jones. Upon the failure of Jones to proceed with the work to completion, the Mercantile Trust Company, as surety for the contractor, undertook and proceeded with the work to completion, and by so doing placed itself in the shoes of Jones, the original contractor, and thereby became entitled to all the rights and remedies to receive and recover the price of the work done by it, according to the contract made with Jones. And if there had been no other contract made with respect to any portion of these 21 houses, the matter would be plain enough; but the contract made by Hensey with Warner and Rheem has introduced the apparent perplexity. By that contract Hensey undertook to construct, or rather to complete, and sell or mortgage for an advanced price, 15 of the 21 houses, and for the execution of this latter contract the Mercantile Trust Company became surety. The Mercantile Trust Company, in its character of surety, therefore, became doubly bound with respect to 15 of the houses, but on separate and distinct contracts, and for different contract prices.

Upon the default, or failure of Jones to proceed with the

work on the 21 houses, the Mercantile Trust Company, as surety, assumed control and proceeded with the work on all the 21 houses, and did not in any manner attempt to designate under what contract it was proceeding with the work. It was, however, bound for the completion of all the 21 houses, by the contract between Hensey and Jones, and this Hensey was entitled to insist upon, and that the work should be done for the aggregate sum agreed upon in the contract with Jones, and not at the advanced rate or price agreed upon in the contract for the completion and sale or mortgage of the 15 houses to Warner and Rheem.

It is argued, however, that as Hensey has not paid all of the contract price agreed to be paid to Jones for the building of the 21 houses for Hensey, the Mercantile Trust Company, who, as surety, completed the houses, has a claim for the balance; and that such claim entitles the company to have the four lots in question sold, under and by virtue of the deed of trust given as indemnity against loss under the contract with Warner and Rheem. This contention is based upon the maxim, that he who seeks equity must do equity, as a condition upon which he can obtain relief. The maxim is certainly a sound one, and is well established upon authority; but it can be applied only under certain restrictions and limitations which would seem to exclude its application under the facts of this case.

Pomeroy, in his work on Equity Jurisprudence, Vol. 1, Sec. 386, has analyzed this maxim, and shows with great clearness under what conditions it can be applied. He says: " If we analyze this general formula, we shall obtain a more accurate notion of the real scope and effect of the principle. (1) In the first place the rule only applies where a party is applying as actor to a court of equity in order to obtain some equitable relief, that is, some relief equitable in its essential nature, as an injunction or a cancelation    *    *    * and it is necessarily assumed that the party would, but for the operation of the rule, be entitled to all the relief which he demands. Unless the party were otherwise so entitled there would plainly be no occasion for invoking the rule.

\*    \*    \*    (2) The court obtains no authority from the principle to impose any arbitrary condition not warranted by the settled doctrines of equity jurisprudence; the court cannot deprive a plaintiff of his full equitable rights under the pretense of awarding to the defendant something to which he has no equitable right, something which equity jurisprudence does not recognize.    \*    \*    \*    (3) Finally, the principle will not apply so as to compel the plaintiff to do equity when the relief sought by the plaintiff and the equitable right or relief secured or awarded to the defendant belong to or grew out of two entirely separate and distinct matters."

Many authorities are cited by the author, and some of them by the counsel for the appellants; and while the rule is variously stated in the several decisions referred to, they all maintain substantially the same general principle.    Among the cases cited is that of *Malone* v. *Bostwick,* 96 Cal. 53; and without stating the facts of that case, the principle that was applied is thus briefly but clearly stated in the opinion of the court:

"It is argued, however, that as the plaintiff is here seeking the aid of a court of equity, he should be compelled to do equity, but the maxim of equity jurisprudence only applies where the relief sought by the plaintiff and the right demanded by the defendant belong to or grow out of the same transaction.    It has no application where the demand of the defendant is based upon a contract separate and distinct from that which forms the subject of the plaintiff's action."    And this is the principle maintained by all the well-considered cases.    There is nothing in the case of *Comstock* v. *Johnson,* 46 N. Y. 615, at all inconsistent with the general principle as stated by Pomeroy and the other authorities cited.

The contract of Hensey with Jones for the work and materials to be supplied for the construction and completion of the 21 houses on lots belonging to Hensey, and that of Hensey with Warner and Rheem for the construction and sale or mortgage of the 15 houses, were separate and distinct contracts, and based on separate and distinct considerations. And though the contracts bear the same date, and the Mer-

cantile Trust Company is surety on the bonds given for the
performance of both contracts, those facts do not make the
contracts dependent the one upon the other.    Each contract
imposed its own separate liability; and whatever liability
may still subsist under the contract between Hensey and
Jones in respect to the 21 houses, may be the subject-matter
of other litigation, and would appear to be peculiarly within
the cognizance of a court of law.

   We are of opinion that the decree of the court below was
correct, and should therefore be affirmed; and it is so or-
dered.   *Decree affirmed.*

   A writ of error to the Supreme Court of the United States
was prayed by the appellants and allowed January 21, 1903.